# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| AETNA INC., et al., : | CIVIL ACTION |
|     Plaintiffs, : | |
| : | |
| v. : | No. 2:10-cv-4219 |
| : | |
| LABORATORY CORPORATION OF AMERICA : | |
| HOLDINGS, : | |
|     Defendant. : | |

Goldberg, J.                                                                                                                                             May 25, 2011

## MEMORANDUM OPINION

This lawsuit arose out of Plaintiffs, Aetna Inc., Aetna Health Holdings, LLC and Aetna Health Management, LLC (hereinafter collectively "Aetna"), termination of their contract for in-network services with Laboratory Corporation of America Holdings (hereinafter "LabCorp"). Aetna alleges that following the termination of this contract, LabCorp improperly contacted participating providers in Aetna's network to entice them to continue using LabCorp's services. Aetna's seven count complaint alleges violations of the Lanham Act (Count I); unfair competition (Count II); violations of state law trade secret statutes (Count III); breach of contract (Count IV); tortious interference with Plaintiffs' contracts with providers (Count V); tortious interference with Plaintiffs' contract with Quest Diagnostics (Count VI); and declaratory and injunctive relief (Count VII). (Compl., ¶¶ 57-102.)

Presently before the Court is LabCorp's motion to dismiss Aetna's claims as time-barred, for failing to state a claim upon which relief can be granted, and for lack of standing. Upon consideration of the respective briefs and for the reasons expressed below, LabCorp's motion will

be granted.

## I. Background

Based upon the averments in the complaint, the pertinent facts, viewed in the light most favorable to Aetna, are as follows:

Aetna and LabCorp were parties to a series of "national ancillary service agreements" between the late 1990s and July 1, 2007. The December 1, 2004, agreement was the last operative contract between the parties, and states that Connecticut law shall govern all aspects of the agreement. Section 11.4 of the contract, referenced as "Statute of Limitations," states that, "no action, regardless of form, arising out of or related to this Agreement may be brought by either party more than twelve (12) months after such cause of action has arisen." In March 2007, Aetna notified LabCorp that it was being terminated as a participating provider effective July 1, 2007. (Compl., ¶¶ 21, 24, 31; Ex. A, ¶¶ 11.2, 11.4.)

According to the complaint, on March 1, 2007, following the termination notice, LabCorp issued a press release, which stated that "it will no longer be a contracted laboratory provider to Aetna Inc." On June 8, 2007, LabCorp sent letters to participating providers in Aetna's network. The letter notified the providers that LabCorp would no longer be a participating provider with Aetna, and also stated "[o]ur commitment to you is that your Aetna patients will not pay more for services performed at LabCorp after July 1, 2007 than they would pay if the services were performed by an in-network laboratory provider." In February 2008, Aetna notified its participating providers that LabCorp was no longer a participating provider, and that despite LabCorp's assurances, benefit levels may vary if patients continued to use LabCorp. (Compl., ¶¶ 32-33, 36.)

On June 26, 2008, LabCorp again sent letters to participating providers stating that while not

a participating provider, LabCorp continued to accept and perform laboratory services for Aetna patients and Aetna was reimbursing them for those services. By letter dated August 1, 2008, Aetna advised LabCorp that its letters to Aetna's participating providers were causing confusion regarding what level of benefits members would receive for LabCorp services. In that letter, Aetna also advised LabCorp that its communications were causing "damages to Aetna." In November 2009, LabCorp sent more letters to Aetna participating providers stating that it continued to submit claims to Aetna and was being reimbursed for those claims. Aetna commenced the above-captioned action on August 19, 2010. (Compl., ¶¶ 37-39.)

## II. Standard of Review

When considering a motion to dismiss, the Court must assume the veracity of well-pleaded factual allegations, construe them in a light most favorable to the Plaintiff, and "then determine whether they plausibly give rise to an entitlement to relief." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1950 (2009) (reaffirming Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007)); Phillips v. Cnty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008). The Court may only look to the facts alleged in the complaint and its attachments when deciding a motion to dismiss. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

## III. Analysis

LabCorp has moved to dismiss Aetna's complaint as time-barred given the parties' contractual one-year suit limitation period. Aetna makes two arguments in opposition. First, Aetna posits that because the one-year limitation clause was not pleaded in its complaint, the Court cannot consider it under the Rule 12(b) standard. Given the well-established principle that the Court may consider the complaint "and its attachments" when deciding a motion to dismiss, we reject this

3

argument. Jordan, 20 F.3d at 1261. Here, the parties' December 1, 2004, contract, which contains a one-year suit limitation clause, is Exhibit A to the complaint. Thus, it is immaterial that Aetna omitted that information in the body of the complaint.

Aetna also maintains that LabCorp's improper conduct has been ongoing, and thus, the complaint is not time-barred under the continuing violation theory. In deciding whether Aetna's action is time-barred under the contractual one-year suit limitation clause, we will, as set forth in the contract, apply Connecticut law, which recognizes the right of parties to impose conditions of contractual liability, including limiting the time period in which suit can be brought. State v. Lombardo Bros. Mason Contractors, Inc., 980 A.2d 983, 995 (Conn. Super. Ct. 2009) (citations omitted). Therefore, the applicable time limitation here is one-year per the agreement.

We must next determine whether the above-captioned action "arises out of or relates to" the December 1, 2004, contract. While Aetna has not addressed this issue and thus, apparently does not dispute that the instant action arises out of or relates to the contract, we note that the Connecticut Supreme Court has interpreted such clauses broadly. See Fink v. Golenbock, 680 A.2d 1243, 1252 (Conn. 1996). Given that the parties' dispute relates to the termination of their contractual relationship and alleged communications deriving therefrom, we find that this action arises out of the December 2004 contract.

The remaining issue is thus, whether LabCorp's alleged conduct was continuing such that the contractual suit limitation period is inapplicable. We have been unable to find any case where the "continuing course of conduct doctrine" was applied to a contract action either to toll the statute of limitations or abrogate a private contractual suit limitation clause. See Williams v. Cushman and Wakefield of Connecticut, Inc., No. CV 95-0148747 S., 1998 WL 246493, at * 2 (Conn. Super. Ct.

4

May 5, 1998) (continuing course of conduct doctrine does not apply to contract actions). Even though the doctrine is typically applied in negligence actions where there is conduct before the discovery of an injury and/or where it may be impossible to pinpoint the exact act or omission at issue, which is not the case here, we will nonetheless examine Aetna's argument. Rivera v. Fairbank Mgmt. Prop., Inc., 703 A.2d 808, 811-12 (Conn. Super. Ct. 1997) (doctrine typically applied in negligence actions).

> Connecticut courts have held that:
>
> To allow the continuing course of conduct doctrine to toll the statute of limitations after discovery "would, in effect, allow the plaintiff to acquiesce in the defendant's conduct for as long as convenient to the plaintiff, contrary to one of the purposes of statutes of limitations, which is to prevent the unexpected enforcement of stale claims concerning which the persons interested have been thrown off their guard by want of prosecution."

Vissa v. Pagano, No. CV 980168124S., 1999 WL 810528, at *3 (Conn. Super. Ct. Sept. 29, 1999) (citations omitted). The continuing course of conduct doctrine thus ends and the statute of limitations begins to run when the actionable harm is discovered. Rivera, 703 A.2d at 812, 814.

Here, Aetna's own allegations demonstrate that at the latest, it knew of LabCorp's alleged actionable conduct on August 1, 2008, when Aetna sent LabCorp a letter advising LabCorp that Aetna was aware of LabCorp's communications with Aetna providers and that such communications were causing confusion to Aetna providers and members as well as damages to Aetna. (Compl., ¶ 38.) Thus, even if the continuing course of conduct doctrine applied to LabCorp's actions, that doctrine became inapplicable on August 1, 2008. The contractual one-year suit limitation period started to run on August 1, 2008, and ended on August 1, 2009. Aetna did not file the above-captioned action until August 19, 2010, over a year later. Accordingly, Aetna's action is time-barred and we need not address the other arguments raised in LabCorp's motion to dismiss.

## IV. Conclusion

For the reasons set forth above, Defendant LabCorp's motion to dismiss will be granted and the Aetna Plaintiffs' complaint will be dismissed as time-barred.

Our Order follows.